UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:13-CR-00268-1 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| WALTER BLACKMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2015, Walter Blackman was sentenced to 15 years in federal prison for distributing enormous quantities of crack cocaine, cocaine, and heroin.[1] But, in 2022, Blackman was diagnosed with a rare form of cancer—Nodular Lymphocyte-Predominant Hodgkin Lymphoma (NLPH Lymphoma)—which would later advance to stage 4. Blackman now moves for compassionate release under 18 U.S.C § 3582(C)(1)(A), which the government originally opposed. R. 122, Def.'s Mot.; R. 132, Gov't.'s Resp. Based on additional medical records, the government now agrees to the motion. R. 157. For the reasons discussed in this Opinion, even before the recent concession by the agreement, the Court would have granted Blackman's motion. Blackman's sentence is immediately reduced to time served.

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

In 2014, Blackman pled guilty to distributing crack cocaine, cocaine, and heroin. R. 63, Plea Agreement ¶ 5; R. 62. After finding that Blackman had sold over 3 kilograms of crack, the Court sentenced him to 15 years in federal prison. R. 99, Sent'g. Order at 1–2.

Blackman has been in custody since April 2013, going back to his pretrial detention. *See* R. 9, Initial Appearance Min. Entry. In 2014 and 2016, Blackman informed his doctors of unusual swelling in his armpit, but no further workup was conducted at those times. R. 148-1, Exh. A, Dr. Marks Decl. ¶ 5; *see* R. 148-2, Exh. B, Def.'s Med. Recs. 1, 10. Then, at some point in 2021 or 2022, Blackman began to experience night sweats and "profound unexplained weight loss." Dr. Marks Decl. ¶¶ 5, 10; *see* Def.'s Med. Recs. at 9–10, 16. According to Dr. Clifford Marks, who reviewed Blackman's medical records on behalf of Blackman's legal team,[2] these symptoms were "highly concerning for cancer[,]" and "[i]maging as far back as December 2021 showed findings concerning for cancer." Dr. Marks Decl. ¶¶ 5, 10.

Despite these symptoms and the imaging, Blackman did not undergo a biopsy to determine the cause of this cancer until July 2022, which led to Blackman's diagnosis of NLPH Lymphoma. Dr. Marks Decl. ¶¶ 5, 13; Def.'s Med. Recs. at 13. Blackman first met with an oncologist in August 2022. Dr. Marks Decl. ¶ 13; R. 150, BOP Med. Recs. at 160. Imaging studies in August and September 2022 revealed "significant tumor burden in Mr. Blackman's upper spine, which were by that point causing

---

[2] Dr. Marks's declaration is only medical expert declaration submitted here. The government has not submitted any medical affidavits contesting Dr. Marks' opinions.

significant pain and limiting his ability to turn his neck." Dr. Marks Decl. ¶ 14; Def.'s Med. Recs. at 15; BOP Med. Recs. at 104, 130–31, 160. In September 2022, Blackman's oncologist notified Blackman's primary care physician that Blackman "must have Radiation Therapy within the next 3 to 5 days to prevent Neurological damage to his cervical spine." Dr. Marks Decl. ¶ 14; BOP Med. Recs. at 130. Given the concerns of permanent damage to Blackman's spinal cord, Blackman was referred to a radiation oncologist who noted the atypical manifestations of Blackman's cancer. *See* Dr. Marks Decl. ¶ 14.

Blackman did not begin treatment for his cancer until October 2022, by which point, his cancer had escalated to stage 4. *See* BOP Med. Recs. at 15, 47, 64, 83, 102, 160; Dr. Marks Decl. ¶¶ 5, 15. During the months between his biopsy and his treatment, Blackman "suffered severe weight loss and sustained significant damage to his kidneys." Dr. Marks Decl. ¶ 5. On October 5, 2022, Blackman was transferred to Federal Medical Center–Butner (FMC Butner) for treatment of his then stage 3 cancer. BOP Med. Recs. at 119; Gov't.'s Resp. at 10–11. That same month, Blackman began undergoing radiation and chemotherapy. Dr. Marks Decl. ¶ 15; *see* BOP Med. Recs. at 78, 84, 101, 112.

In November 2022, Blackman's oncologist noted that "he [was] doing well" in response to treatment. BOP Med. Recs. at 54. And Blackman's "neck pain resolved within weeks of starting radiation therapy." Dr. Marks Decl. ¶ 15; *see* BOP Med. Recs. 57, 59. By February 2023, Blackman finished his last cycle of chemotherapy, and imaging in February 2023 showed a "significant reduction in the size of the lesion in his

3

spine … no new lymph node swelling and a reduction in the size of swollen lymph nodes in [his] left chest and armpit." Dr. Marks Decl. ¶ 16; BOP Med. Recs. at 2, 8, 14. And by March 2023, Blackman's oncologist noted that he did not "appreciate any definitive evidence of active disease" but highly recommended "ongoing surveillance." BOP Med. Recs. at 2.

Despite reasons for cautious optimism based on the February 2023 imaging and March 2023 oncology notes, "the rare nature of [Blackman's] disease complicates predictions about his prognosis." Dr. Marks Decl. ¶ 17. NLPH Lymphoma accounts for just 5% of Hodgkin Lymphomas. *Id.* ¶ 6 (citing L. Strobbe et al., *A 20-year population-based study on the epidemiology, clinical features, treatment, and outcome of nodular lymphocyte predominant Hodgkin lymphoma*, 95 Annals of Hematol. 417 (Jan. 5, 2016) [hereinafter Strobbe et al., *A 20-year population-based study*]; Dennis A. Eichenauer & Andreas Engert, *Nodular lymphocyte-predominant Hodgkin lymphoma: a unique disease deserving unique management*, Hematology Am. Soc. Hematol. Educ. Program 324 (Dec. 8, 2017)). And, according to Dr. Marks, "Blackman's cancer has multiple features that mark him as more likely to experience recurrence of disease or transformation into a more aggressive form of cancer with a far higher mortality rate." Dr. Marks Decl. ¶ 17. Studies suggest that Blackman's age, advanced stage of cancer, symptoms (weight loss, night sweats), and involvement of the bone or spleen are "associated with a higher risk of recurrence after chemotherapy." *Id.* ¶ 7 (citing C. Jackson et al., *Lymphocyte-Predominant Hodgkin Lymphoma—clinical features and treatment outcomes from a 30-year experience*, 21 Annals of Oncology, 2061–

4

68 (2010); Katharine H. Xing et al., *Advanced-Stage nodular lymphocyte predominant Hodgkin lymphoma compared with classical Hodgkin lymphoma: a matched pair outcome analysis*, 123 Blood 3567–73 (Jun. 5, 2014) [hereinafter Katharine H. Xing et al., *Advanced-Stage nodular lymphocyte predominant Hodgkin lymphoma*]).

## II. Legal Standard

In seeking release, Blackman invokes 18 U.SC. § 3582(c)(1)(A), which allows a defendant to petition the Court to modify a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction," and if the modification would be consistent with the sentencing factors in 18 U.S.C. § 3553(a) and the applicable Sentencing Guidelines policy statements (if any) § 3582(c)(1)(A)(i).

Under this statute, before petitioning the Court, a defendant must exhaust administrative remedies with the Bureau of Prisons (commonly referred to as the BOP) by first asking the warden of the defendant's facility to request the sentence modification on the defendant's behalf, and then either waiting 30 days or exhausting appeal remedies of the warden's denial within the BOP. 18 U.S.C. § 3582(c)(1)(A). The government concedes that Blackman exhausted his administrative remedies (Gov't.'s Resp. at 7–8), so the Court need only consider whether (1) extraordinary and compelling reasons exist under § 3582(c)(1)(A)(i); and (2) whether the § 3553(a) factors are consistent with a sentencing reduction.

### III. Analysis

### A. Extraordinary and Compelling Reasons

Under § 3582(c)(1)(A), a court may modify a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As explained by the Seventh Circuit, however, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release." *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020). Applicable amendments are arriving soon (effective November 1), but right now the Sentencing Guidelines' policy statement does not directly apply to Blackman's motion. Still, the Seventh Circuit has recognized that substantive aspects of U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* at 1180. Accordingly, "the Commission's analysis can guide discretion without being conclusive." *Id.*; *see also United States v. Cardena*, 461 F. Supp. 3d 798, 802 (N.D. Ill. 2020) (joining "the vast majority of district courts to conclude that … the court may look beyond the defendant's medical condition, age, and family circumstances, as delineated in the Sentencing Commission's guidance, to

6

construe what constitutes extraordinary and compelling circumstances.") (cleaned up).³

The Court considers the Sentencing Commission's recent advice, which describes "extraordinary and compelling" reasons for release as including:

> (A) Medical Condition of the Defendant.—
>     (i) The defendant is suffering from a terminal illness ….
>     (ii) The defendant is—
>         (I) suffering from a serious physical or medical condition,
>         (II) suffering from a serious functional or cognitive impairment, or
>         (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. —The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>     (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>     (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.

---

³This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See Jack Metzler, Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Nothing in the record suggests that (B) or (C) applies, given Blackman's age (61) and family circumstances. And despite the risk that Blackman faces from his cancer, the record does not state whether his cancer is terminal. *See* Dr. Marks Decl. ¶ 17 (noting the complications in making "predictions about [Blackman's] prognosis"), so (A)(i) does not apply. Likewise, A(ii) does not apply because the record does not indicate that Blackman is not expected to recover. *See id.*

Still, Blackman's medical condition does constitute an extraordinary and compelling reason warranting compassionate release under the catch-all "other reasons" category. *See* U.S.S.G. 1B1.13, cmt. n.1(D).[4] Although the government seems to suggest that U.S.S.G. § 1B1.13 cmt. n.1(A) is the working definition of extraordinary and compelling reasons, this working definition is conspicuously incomplete by suggesting that only one subsection is relevant. *See* Gov't.'s Resp. at 13. The Seventh Circuit has held that "§ 1B1.13 and its Application Notes" as a whole provide the working definition, covering § 1B1.13 cmt. n.1(D) as much as cmt. n.1(A). *See Gunn*, 980 F. 3d, at 1180. Thus, it is incorrect that Blackman's medical condition cannot be an

---

[4]Although § 1B1.13 cmt. n.1(D) refers to other reasons "as determined by the Director of the [BOP]," this portion is:

> part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

*United States v. Redd*, 444 F. Supp. 3d 717, 725–26 (E.D. Va. 2020); *United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020), *aff'd*, 993 F.3d 821 (10th Cir. 2021) (noting provision is "no longer appropriate, given Congress's decision to remove the Director's control over compassionate release motions"); *United States v. Brooks*, 2020 WL 2509107, at *4 (C.D. Ill. May 15, 2020).

8

extraordinary and compelling reason simply because § 1B1.13, comment note 1(A) does not apply.

It is worthing repeating that although a court should use § 1B1.13 to "guide its discretion," ultimately the court must rely on its own understanding of extraordinary and compelling reasons. *Gunn*, 980 F.3d, at 1180. With this in mind, the Court turns to the merits on whether Blackman's cancer is an extraordinary and compelling reason for compassionate release.

Blackman's cancer—the kind, the stage, and the medical community's understanding of it—is extraordinary. By October 2022, Blackman's NLPH Lymphoma had escalated to stage 4. BOP Med. Recs. at 64, 83, 102, 160. According to Dr. Marks, "[p]opulation studies of NLPHL suggest less than 10 percent of new diagnoses are Stage IV cancers—likely fewer than 75 cases per year in the United States." Dr. Marks Decl. ¶ 7 (citing Strobbe et al., *A 20-year population-based study*). As noted earlier, the government offered no evidence to rebut that opinion. Also, NLPH Lymphoma "accounts for just 5 percent of Hodgkin Lymphomas." Dr. Marks Decl. ¶ 6; *see* Strobbe et al., *A 20-year population-based study* at 417. And though the government cited facts about Hodgkin's Lymphoma generally, these facts bear little weight given the rare form of Hodgkin's Lymphoma that Blackman suffers. *See* Gov't.'s Resp. at 9.

It bears emphasizing that Dr. Marks's declaration is the *only* medical expert declaration in the record. The government has failed to submit any affidavits challenging Dr. Marks's opinions that Blackman suffers from "a rare presentation of a rare form of advanced Hodgkin's lymphoma" or that "the rare nature of his disease

9

complicates predictions about his prognosis." Dr. Marks Decl. ¶¶ 5, 17. Likewise, the government has not submitted any affidavits challenging Dr. Marks's opinion that Blackman's stage (4) of NLPH Lymphoma is rare or that his cancer has features that "mark him as more likely to experience recurrence of disease or transformation into a more aggressive form of cancer with a far higher mortality rate." Dr. Marks Decl. ¶ 7. Because Dr. Marks's opinions are uncontested, they establish the rarity and higher risk of recurrence or transformation of Blackman's cancer. In sum, Blackman's cancer is an extraordinary reason for compassionate release.

Moving on, Blackman's medical condition—and treatment of his condition while incarcerated—is a compelling reason for release. Dr. Marks explains that Blackman suffers a rare form of cancer with characteristics making it more likely to recur or transform into a more aggressive form. Dr. Marks Decl. ¶¶ 5, 7. Also, Dr. Marks cites the "significant delays" that Blackman encountered obtaining proper care for his cancer while he was incarcerated. *Id.* ¶ 17. Though the government earlier argued that Dr. Marks's opinion on the cancer recurring is "too speculative a basis" to establish Blackman's entitlement to release, it failed to proffer any opinions from a medical professional challenging this assessment. R. 149, Gov't.'s Sur-reply ¶ 4. And even if Dr. Marks's assessment would be "speculative" when compared to other medical prognoses in ordinary cases, it is the kind of reason-based, evidence-based "speculation" that is justifiable given the rarity of Blackman's type of cancer and how difficult it is to predict Blackman's prognosis—caveats that Dr. Marks acknowledges. *See* Dr. Marks Decl. ¶¶ 5, 17.

10

Blackman's medical condition (and treatment of his condition during his incarceration) is compelling enough for release even if a doctor cannot precisely predict whether Blackman's cancer will worsen. The record reflects multiple instances (before his transfer to FMC Butner) where Blackman came remarkably close to not getting the needed treatment for his cancer and encountered substantial delays in getting diagnosed with cancer and starting treatment. In fact, in September 2022, an oncologist told Blackman's primary care physician that Blackman "must have Radiation Therapy *within the next 3 to 5 days* to prevent Neurological damage to his cervical spine." Dr. Marks Decl. ¶ 14 (emphasis added); BOP Med. Recs. at 130. And Blackman was not diagnosed with his cancer until 2022, despite reporting symptoms year before. Dr. Marks Decl. ¶¶ 5, 13; *see* Def.'s Med. Recs. at 2, 9–10, 12–13, 16–17. What's more, Blackman did not begin any treatment for his cancer until October 2022, despite "imaging as far back as December 2021 show[ing] findings concerning for cancer." Dr. Marks Decl. ¶¶ 5, 10, 14–15; *see* BOP Med. Recs. at 15, 47, 64, 83, 102, 119, 160; Def.'s Med. Recs. at 15.

Significantly, although Blackman's condition improved from his treatment at FMC Butner, the government did not provide any assurance or commitment that Blackman would remain at FMC Butner for treatment or assessments for if his cancer recurs or transforms, nor any medical expert affidavit assessing Blackman's prospects or contesting Blackman's cancer having a higher risk of recurrence or transformation. The government stated that the BOP has a projected release date for Blackman of September 22, 2016 but does not specify where Blackman would be held

11

until that date. Gov't.'s Resp. at 3. These omissions are troubling given: the past treatment (or lack thereof) of Blackman's cancer before he was transferred to FMC Butner; the higher risk of recurrence or transformation of his cancer into an "even more aggressive form of cancer with a far higher mortality rate[;]" and the "limited information on optimal management" of his type of cancer.[5] Dr. Marks Decl. ¶¶ 7, 17; Katharine H. Xing et al., *Advanced-Stage nodular lymphocyte predominant Hodgkin lymphoma* at 3567.

Overall, though there were reasons to be hopeful for Blackman's recovery, the inadequate, delayed treatment of his cancer before he was transferred to FMC Butner, the rareness of his cancer, and the high risk of his cancer recurring or transforming all are compelling reasons for a reduction in his sentence. For the reasons explained, Blackman's cancer, in addition to the past treatment of his cancer, is an extraordinary and compelling reason to warrant a reduction in his sentence.[6]

---

[5]Courts have held medical circumstances to be "extraordinary and compelling" even if they do not match the medical circumstances specifically described in 1B1.13, cmt. n.1(A), especially where the record supported that the BOP's medical care was inadequate. *See, e.g.*, *United States v. Burr*, 2022 WL 17357233, at *6 (M.D.N.C. Dec. 1, 2022) ("[W]hen there is a strong showing that the BOP's medical care is inadequate, a sentence reduction may be appropriate"); *United States v. Beck*, 425 F. Supp. 3d 573, 581 (M.D.N.C. 2019) (holding that the BOP's "abysmal" treatment of a defendant's breast cancer was an "extraordinary and compelling" reason).

[6]Blackman argues FMC Butner "is a facility where individuals often go when they are on hospice care and close to the end of their lives" and that he "has informed his legal counsel that he has already met multiple people who have since passed away during his six months at FMC Butner." R. 148, Def.'s Reply at 9, n.1. Because extraordinary and compelling reasons already exist absent this argument, the Court need not address this point.

**B. Section 3553(a) Factors**

The Court turns to whether granting the motion is consistent with § 3553(a)'s sentencing factors. The Court considers "the factors set forth in section 3553(a)." 18 U.SC. § 3582(c)(1)(A). The relevant factors here are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a). Although these factors supported Blackman's 15-year sentence at his 2015 sentencing, today the mitigating factors in the intervening eight years since his sentencing support a reduction in his sentence and compassionate release.

In 2015, the Court imposed the 15-year sentence on Blackman based on the enormous drug quantities and breadth of drug dealing, but also partly because "his criminal history really point[ed] to a serious recidivism risk." R. 100, Sent'g. Statement of Reasons at 4. But, since then, Blackman's recidivism risks have decreased. Blackman writes persuasively about how "almost get[ting] to the stage of death before proper care was given" has changed his outlook on life and made him committed to living a peaceful and lawful life. R. 148-3, Exh. C, Blackman Letter at 3. Blackman also cites how losing his daughter during his incarceration and then later his mother around the time of his cancer diagnosis changed his perspective. *Id.* at 2–3. The Court

13

is convinced that due to these profound experiences, Blackman is "ready to enjoy however much time [he has] left living a peaceful life." *Id.* at 2.

Relatedly, Blackman's release plan will further mitigate recidivism risks and risks to the public. Blackman plans to live with his sister in Indiana—removed from his former gang ties—where he would receive stable housing and family support. *See* R. 148-5, Sheilonda Blackman Letter at 2.[7] Notably, Blackman's sister lives near a VA hospital where he would have "access to appropriate monitoring of his condition going forward." *See* Dr. Marks Decl. ¶ 17; Sheilonda Blackman Letter at 2. Given Blackman's expressed commitment to living peacefully, his medical condition, and release plans which include a support system and access to medical care, more prison time is not necessary to deter Blackman from crime or protect the public. Supervised release suffices now.

It is worth noting that Blackman not having a disciplinary report in prison for the last three years is not compelling by itself. *See* Def.'s Reply at 6. But its nexus to the timing of Blackman's cancer is compelling. That is, the fact that Blackman has not had a disciplinary report since being diagnosed with his cancer (even before then) reflects the mitigation of risks to the public upon his release. *See* Gov't.'s Resp. at 15. It also is persuasive that Blackman has already served 10-plus years of his 15-year sentence, making his offenses (instant and priors) more remote in time.

---

[7] Blackman states he plans to eventually return to a career in trucking and identifies the RITAS Ministry as another source of support that would enable him to be a positive asset to his community. R.148-4, Exh. D, RITAS Letter; Blackman Letter at 3. Though it is helpful and appropriate for Blackman to identify this program and his trucking aspirations, these facts are not crucial to this Opinion, especially as Blackman's probation officer will also provide reentry support.

14

Also, although this Court determined at Blackman's sentencing that a 15-year sentence was necessary given the severity of Blackman's offense (and other factors), Blackman's 10-plus years in prison—which entailed suffering from stage 4 cancer amid a global pandemic—was significantly more severe than contemplated. Thus, the reduction of Blackman's sentence, in part, reflects that his sentence was exacerbated by being incarcerated (with his cancer) during the pandemic.

Perhaps one of the more compelling factors in favor of release is Blackman's need to receive adequate medical care. Blackman explains that his place of residence upon release (his sister's home in Indiana) would be "a 10-minute drive to the Adam Benjamin Jr., Veterans' Administration Outpatient Clinic for routine check-ups and care," and that "there are other world-class facilities in the Chicagoland area should he ever need more specialized care." Def.'s Reply at 10–11. Given Blackman's need to have "access to appropriate monitoring of his condition going forward," these goals would best be supported outside the confinement of the BOP where Blackman can be supported by his family. *See* Dr. Marks Decl. ¶ 17. Overall, Blackman has demonstrated an extraordinary and compelling reasons warranting a reduction in his sentence to time served, and the § 3553(a) factors support this reduction.[8]

---

[8] Blackman asks the Court to allow him to serve the remainder of his sentence in home-confinement in the alternative to compassionate release. *See* Mot. at 2. But the Court need not address this request because it grants Blackman's request for compassionate release. Also, the record does not reflect an issue with Blackman living with his sister upon his release to preclude typical supervised release conditions absent home confinement.

15

## IV. Conclusion

Blackman's motion for compassionate release is granted. Accordingly, Blackman's sentence is hereby reduced to time served followed by (for now) the same five-year supervised-release period imposed at the original sentencing (a motion for early termination might very well be warranted after one year). The government shall take steps to promptly communicate the entry of this order to the Bureau of Prisons.

Finally, the Court extends its deep gratitude to Blackman's recruited *pro bono* counsel, Charles Taylor, for his diligent and able representation of Blackman, who would have otherwise proceeded without attorney representation. The Court also thanks *pro bono* expert Dr. Marks for his time and service in this case.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: October 6, 2023